MARY MOODY ET AL.
vs.                         } SEPTEMBER TERM, 1848.
EMILY ELLIOTT ET AL.

[CONSTRUCTION OF WILL.]

A TESTATOR devised certain real and personal property to his wife, "to her use, for the benefit of her and her children under age, and after they all come of age," to his wife during her natural life, and "*no longer;*" and after her death, the whole "to be divided equally, share and share alike," between the testator's seven children, (naming them,) or equally between such as shall then be living. It was HELD—

That, though this will was executed prior to the act of 1822, ch. 162, which abolishes thereafter estates in joint-tenancy, unless the devise expressly declares, that the property shall be so held, this devise does not create an estate in joint-tenancy.

The words, "to be equally divided, share and share alike," even in a deed, would create a tenancy in common.

The will being prior to the act of 1825, ch. 119, and there being no words of inheritance or perpetuity, or any other language used, from which the intention of the testator to pass a fee could be clearly ascertained, it was held, that the children took estates for life only.

The true construction of the whole clause is—That the widow took an estate for life—for a period thereof to be held by her, for the benefit of herself and her children, that is, during their minority. Upon the children attaining their full age, the widow still living, her estate would continue until her death disencumbered of any charge on account of the children ; and, upon her demise, the limitation over for life to the children would take effect, and upon their death, the inheritance would pass to the heirs at law of the testator, as property undisposed of by the will.

[The question involved in this case, relates to the construction of the will of James Elliott, deceased, who died in 1809, and is brought before the court by exceptions to the Auditor's report ; the nature of the case being sufficiently explained by the Chancellor's statement of the facts, and his comments thereon :]

The Chancellor:

The question relates to the disposition of the proceeds of a house and lot on Aisquith street, in the city of Baltimore, sold under a decree of this court.

The clause in the will devising this property, is in the following words : "I give and devise unto my beloved wife, Mary Elliott, my house and lot on the east side of Aisquith street, with all the improvements and privileges thereto belonging in fee-simple," (and certain personal property,) "to her use, for the benefit of her and her children under age, and after they all come of age, to my wife—her natural life, for her to peaceably enjoy, *and no longer.* She to pay all taxes that may arise, and after her death the whole of this demise, both real and personal to be divided equally, share and share alike, between my seven children, five sons and two daughters," (naming them,) "or equally between all those of my children as shall then be living."

The will contains various other clauses, affecting other portions of the property of the testator, but has no residuary clause disposing of such portions of his estate as may not be embraced in the specific devises and bequests.

Four of the children are dead ; two, John and Joseph, leaving issue ; and James and Thomas, without issue ; and, the

bill was filed by the widow, who married a second time, (and whose second husband has also died,) and several of the children of the testator, against other of his children, for the sale of this property ; upon the allegation, that it was not susceptible of partition, and, that it would be advantageous to all parties concerned that it should be sold, and the proceeds divided among them according to their several and respective rights.

In the account of the Auditor reported on the 7th of July last, the net proceeds of the sale, after assigning to the widow a portion thereof, as an equivalent for her life estate, are distributed among the surviving children, and the grandchildren of the testator, giving to the grandchildren the portions of their respective parents ; and the point to be decided is, whether this distribution is the proper one.

The bill proceeded upon the hypothesis, that the whole estate was disposed of by the will, and must be understood as conceding, that the grandchildren had succeeded to the rights of their parents, as otherwise there could have been no motive for making them parties.    It was, however, subsequently supposed that these grandchildren of the testator, were not entitled to any portion of this money, upon the ground that the limitation over, after the termination of the life estate of the widow, was restricted to the children who may be living when that event shall occur.    And in opposition to the right of the grandchildren, it was also insisted in the argument, that the children of the testator, whether the benefit of the devise, was to be confined to the survivors of the widow or not, took as joint tenants, and that consequently, the children of the deceased brothers must be excluded, upon the doctrine of survivorship —the will having been executed prior to the act of 1822, ch. 162, which abolishes thereafter, estates in joint-tenancy, except where the deed, devise, or instrument of writing, expressly declares, that the property shall be so held.

It appears to me, however, to be very clear upon authority, that this devise does not create an estate in joint-tenancy. Perhaps, in the present disposition of the courts in regard to

these estates, it would not do so even in a deed and in a court of law; but, unquestionably, in a court of equity,. and acting upon a will, it cannot have that effect. 4 *Kent*, 361.

The words of the devise are, "to be divided equally, share and share alike," which words, even in a deed, have been construed to create a tenancy in common. 1 *Thos. Coke*, 773, *note* 42. And the cases referred to in the same note show, that the words, "share and share alike," or "between," or any other words indicating an intention, that the devisees shall take several and distinct shares, will make them tenants in common.

The children, therefore, of the testator, take as tenants in common, after the determination of the life estate of the widow; and, as I think, they take this estate for life only—the will being prior to the act of 1825, chap. 119, and, there being no words of inheritance or perpetuity, or any other language from which the intention of the testator to pass a fee, can be clearly ascertained, which, according to the authorities, is indispensable, even in the case of a will, where a much more liberal construction is allowed than in a deed or grant.

As, therefore, these parties took as tenants in common in remainder for life only, it follows that the fee was undisposed of by the will, and, consequently, upon the termination of the various estates for life, the heirs of the testator would be entitled to the possession and enjoyment of the inheritance.

The true construction of this clause of the will in my opinion, is this. The widow took an estate for life—for a period thereof, to be held by her, for the benefit of herself and her children, that is, during their minority. Upon the children attaining their full age, the widow still living, her estate would continue until her death, disencumbered of any charge on account of the children; and upon her demise the limitation over for life to the children would take effect, and upon their deaths the inheritance would pass to the heirs at law of the testator, as property undisposed of by his will.

The Auditor by his report of the 7th of July last, gives to the children of the two sons of the testator, who died leaving

25*

issue, the portion to which their respective parents would have been entitled ; that is, he gives to each family of children one-fifth of the money, after deducting the share awarded to the widow for her life estate ; and the remaining three-fifths, he assigns to the surviving children. This distribution was made upon the hypothesis, that the whole estate passed by the will, and, that the children of the deceased children of the testator, succeeded to the interests of their respective parents, which was the view taken by the draftsman of the bill.

This view, however, is, in my judgment, erroneous, inasmuch as the inheritance did not pass under the will ; but, as the proportions awarded to the parties by this account, are precisely the same as they would be, if the inheritance had been regarded by the Auditor as undisposed of by the will, there is no reason why another account should be stated. In either aspect of the case, the result would be the same, and sending the case back to the Auditor would be accumulating costs for no object.

The idea was thrown out in the course of the argument, that under this devise the widow took the entire estate ; but, I did not understand, that it was very seriously pressed, and it appeared to me manifest, that such a construction would be clearly repugnant to the intention of the testator, and, therefore, wholly inadmissible. The language of the will is clear and explicit, that she should hold for life, and *"no longer,"* and although in a previous part of the clause, the words "in fee-simple" are employed, it is obvious they were not used in the sense attributed to them.

An order will pass ratifying the first account of the Auditor.

———

[No appeal was taken in this case.]